```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
---------------------------------------X
CRAIG TERRY,

                Plaintiff,
                                                    MEMORANDUM AND ORDER
        - against -
                                                       17 Civ. 8240 (NRB)
MASTERPIECE ADVERTISING DESIGN,

                Defendant.
---------------------------------------X
```
**NAOMI REICE BUCHWALD**
**UNITED STATES DISTRICT JUDGE**

**I.  Background**

Plaintiff Craig Terry sued defendant Masterpiece Advertising Design on October 26, 2017, alleging that Masterpiece infringed Terry's copyright in a photograph of the Levoy Theater in Millville, New Jersey.  Compl., Oct. 26, 2017, ECF No. 1.  Terry alleged that Masterpiece, without having obtained a license or Terry's consent, used the photograph in an advertisement for Cape Bank, a local bank based in South Jersey.  Terry timely served process on Masterpiece, see Aff. of Service, Dec. 27, 2017, ECF No. 7, but Masterpiece did not timely respond or otherwise defend the action.  The Clerk of the Court subsequently issued, at Terry's request, a certificate of default pursuant to Rule 55(a) of the Federal Rules of Civil Procedure.  See Certificate of Default, Dec. 29, 2017, ECF No. 10.

Terry then moved for default judgment in February 2018, seeking $20,000 in actual damages under the Copyright Act, 17

1

U.S.C. § 504(b). See Mot., Feb. 28, 2018, ECF No. 11. The motion offered no basis for this claim for damages beyond his attorney Richard Liebowitz's "belie[f] that an inquest into damages would be unnecessary because the Defendant's choice to ignore these proceedings should be construed against it in order to avoid a lengthy and intensive inquiry into damages." Liebowitz Aff. ¶ 6, Feb. 28, 2018, ECF No. 12. Rejecting the rank speculation represented by this request, we explained the legal flaws in this contention, denied the motion without prejudice, and directed that any renewed motion for default judgment "include all evidence necessary to support the amount of actual damages being claimed." Mar. 22, 2018 Order at 3, ECF No. 14. Terry again moves for a default judgment. See Mot., June 11, 2018, ECF No. 15.

## II. Discussion

"In light of [Masterpiece]'s default, a court is required to accept all of [Terry's] factual allegations as true and draw all reasonable inferences in [his] favor." Finkel v. Romanowicz, 577 F.3d 79, 84 (2d Cir. 2009). Nonetheless, "prior to entering default judgment, a district court is 'required to determine whether the [plaintiff's] allegations establish [the defendant's] liability as a matter of law." City of New York v. Mickalis Pawn Shop, LLC, 645 F.3d 114, 137 (2d Cir. 2011) (alterations in original) (quoting Finkel, 577 F.3d at 84). Further, a default "is not considered an admission of damages." Cement & Concrete

2

Workers Dist. Council Welfare Fund v. Metro Found. Contractors Inc., 699 F.3d 230, 234 (2d Cir. 2012) (quoting Greyhound Exhibitgroup, Inc. v. E.L.U.L. Realty Corp., 973 F.2d 155, 158 (2d Cir. 1992)); see also Au Bon Pain Corp v. Artect, Inc., 653 F.2d 61, 65 (2d Cir. 1981). Rather, following a default, we "may determine [whether] there is sufficient evidence either based upon evidence presented at a hearing" held under Rule 55(b)(2) "or upon a review of detailed affidavits and documentary evidence." Cement & Concrete, 699 F.3d at 234. But regardless of how the record is developed, "[t]here must be an evidentiary basis for the damages sought by plaintiff." Id.

Because Terry's complaint adequately pleads that he holds a copyright in the photograph of the Levoy Theater and that Masterpiece infringed his exclusive rights in the photograph under the Copyright Act, see 17 U.S.C. § 106, Masterpiece's default is sufficient to establish its liability.

We accordingly turn to the question of damages. Generally, "an infringer of copyright is liable for either -- (1) the copyright owner's actual damages and any additional profits of the infringer, as provided by subsection (b); or (2) statutory damages, as provided by subsection (c)." 17 U.S.C. § 504(a). Terry has elected to seek his "actual damages and any additional profits of the infringer," which we will refer to as § 504(b) damages; § 504(b) damages consist of (1) "the actual damages suffered by

3

[the copyright owner] as a result of the infringement" and (2) "any profits of the infringer that are attributable to the infringement and are not taken into account in computing the actual damages." Id. § 504(b).

Terry's attorney has again averred "that an inquest into damages would be unnecessary because the Defendant's choice to ignore these proceedings should be construed against it," Liebowitz Aff. ¶ 6, June 11, 2018, ECF No. 16, though well-established case law and the law of this case make clear the incorrectness of this belief. As we have previously explained, the proposition that Liebowitz offers "has no basis in law and cannot be reconciled with Rule 55 of the Federal Rules of Civil Procedure, which contemplates the possibility that a court, prior to the entry of default judgment, will 'conduct hearings' when 'it needs to . . . determine the amount of damages.'" Mar. 22, 2018 Order at 2 (alteration in original) (quoting Fed. R. Civ. P. 55(b)(2)). The argument that "inquiry into damages is obviated by the mere fact that a defendant has not defended the action (a characteristic common to every action where a default judgment is being considered) and that [plaintiff] is therefore entitled to a damages amount constructed from whole cloth . . . would improperly render Rule 55(b)(2) wholly superfluous." Id. at 2-3 (citing statutory interpretation authorities). The argument was meritless

when made as part of Terry's first motion for default judgment; it did not bear repeating as part of this second motion.

To his credit, Terry's attorney does not appear to have entirely ignored our prior order. Though this second motion seeks the exact same $20,000 amount in damages, Terry's attorney has submitted a declaration from Terry that sets forth the bases of the $20,000 request. See Terry Decl., June 11, 2018, ECF No. 17. According to Terry, $10,000 is the licensing fee that he would have charged for the infringing advertisement's use and is therefore a reasonable estimate of his actual damages, and an additional $10,000 in damages corresponding to Masterpiece's profits is appropriate. Id. ¶¶ 8-10, June 11, 2018, ECF No. 17. We consider each part of Terry's claimed § 504(b) damages in turn.

**A. Actual Damages to the Copyright Holder**

As to the actual damages portion, Terry asserts that he would have charged "at least $10,000" for use "in connection with commercial advertising for the bank's services" and represents that this $10,000 figure "is commercially reasonable for nationwide advertising use in connection with financial services." Id. ¶ 8. In support of this assertion, Terry cites an image of the Sunshine Cinema in New York offered by Getty Images that -- when licensed for a full ad in print use, for up to five years and 5 million in circulation -- licenses for $9,565. Id. ¶ 9 & ex. B.

5

In calculating the actual damages portion of § 504(b) damages, the lost license fee to the copyright holder is a reasonable enough place to start. See Davis v. Gap, Inc., 246 F.3d 152, 166 (2d Cir. 2001) (interpreting "actual damages" in 17 U.S.C. § 504(b) to include "the owner's loss of the fair market value of the license fees he might have exacted of the defendant"). But "[t]he question is not what the owner would have charged, but rather what is the fair market value," id., so Terry's representation that he would have charged at least $10,000 neither begins nor ends the analysis.[1] Rather, "the owner must show that the thing taken had a fair market value." Id. (emphasis added).[2]

The proof that Terry provides falls far short of establishing $10,000 as a fair market value. An examination of the infringing advertisement and the business that it promotes, Cape Bank, quickly reveals the inaptness of these parameters associated with the $9,565 fee that he cites in support. As an initial matter, the advertisement itself comprises about one-third of a page, with the

---

[1] Terry's assertion that restaging the photograph in question would cost upwards of $6,000, Terry Decl. ¶ 6, is also an analytic nonstarter. If, for example, Terry had a physical photograph that Masterpiece took without permission and Terry were required to recreate the photograph in order to use it, the cost of re-creation might well be a reasonable estimate of his actual damages. But the photograph here is a non-rivalrous good in that Masterpiece's infringing use of the photograph does not exclude Terry from using the photograph, so the cost of re-creation is hardly central to the analysis.

[2] This requirement comports with common economic sense. It might very well be that at a price of $10,000, Terry would not have been able to sell any licenses for use of the image. $10,000 per license multiplied by zero licenses issued, of course, equals $0.

6

use of Terry's photograph comprising one-sixteenth of the page at most.  Compl. Ex. B.

Further, and more significantly, "nationwide advertising use" (corresponding to up to 5 million in circulation) is plainly not the appropriate frame of reference for the advertisement in question.  The one supported instance of infringement is an advertisement that appeared in The Grapevine, Compl. Ex. B, "a community newspaper delivered free to most residences in the City of Vineland, NJ and throughout Cumberland County every Wednesday."[3] Perhaps indicative of the target market, the advertisement in question appears next to an advertisement listing the weekly specials at Main's Meat Market in Vineland and an event listing including an elementary school fundraiser at the local mall's Chick-Fil-A.  Compl., Ex. B.  Notably, the infringing advertisement emphasizes Cape Bank's "LOCAL DECISION MAKING" and proclaims that "It's people like [the two bank officers pictured] who make us a community bank."  Id.  "They're experienced, knowledgeable, accessible and local -- which means you don't need to cross multiple state lines to get answers."  Id.

We don't need to cross multiple state lines either (or even the Hudson River) to get answers regarding Cape Bank's business. Cursory research into Cape Bank confirms the local decision making

---

[3] See The Grapevine, About Us, http://grapevinenewspaper.com/about-us/ (last visited June 18, 2018).

7

that the advertisement touts. As of December 31, 2015, Cape Bank operated 22 branches across four counties in Southern New Jersey; as the bank describes its business, its "primary market area consists of Atlantic, Cape May, Cumberland and Gloucester counties in New Jersey," in which it held 8.5%, 11.6%, 18.3%, and 1.5% market share, respectively.[4] A national bank Cape Bank was not, and national in circulation the infringing advertisement was not.

While we reject the specific parameters that Terry has used to price a license from Getty Images for the Sunshine Cinema photograph, Getty Images's pricing utility allows us to adjust the usage specifications to better reflect the Cape Bank advertisement.[5] Maintaining all other parameters as Terry has set them but adjusting the size parameter to reflect the size of the advertisement in the record, adjusting the circulation to "up to 100,000" to better reflect the circulation of The Grapevine and the population of Cape Bank's primary market,[6] and adjusting the duration to six months to better reflect the typical length of an

---

[4] See Cape Bancorp, Inc., Form 10-K, Dec. 31, 2015, https://www.sec.gov/Archives/edgar/data/1411303/000143774916027675/cbnj20151231_10k.htm (last visited June 18, 2018).

[5] We accept -- at least in this case -- the validity of a comparison to a photograph for which Getty Images manages intellectual property rights, though there may be plenty of reasons that such a comparison is inapt. Notably, there is no indication that Terry's photograph was rights-managed by Getty Images or that the prices of licenses managed by Getty Images are representative of the fair market value of licenses more broadly.

[6] As of the 2010 Census, Cumberland County had slightly more than 50,000 households and the four counties that Cape Bank identifies as its primary market area had fewer than 300,000 households.

advertising campaign, Getty Images prices a license at $1,560.[7]
Given that Terry relies on Getty's pricing utility to support his
determination of a reasonable license fee, we conclude that it
offers a reasonable enough estimate here of the price "on which a
willing buyer and a willing seller would have agreed for the use
taken by the infringer" -- $1,560.  Davis, 246 F.3d at 167.

**B.  Profits of the Infringer**

Turning to the profits portion of § 504(b), Terry's suggestion
that the Court should award $10,000 in additional profits fares no
better than his attorney's suggestion that no inquest into damages
is necessary.  While "courts must necessarily engage in some degree
of speculation" in assessing copyright damages, id. (quoting
Stevens Linen Assocs. v. Mastercraft Corp., 656 F.2d 11, 14 (2d
Cir. 1981)), a § 504(b) damages award must rely on some "factual
basis rather than 'undue speculation,'" Bus. Trends Analysts, Inc.
v. Freedonia Grp., Inc., 887 F.2d 399, 404 (2d Cir. 1989) (quoting
Abeshouse v. Ultragraphics, Inc., 754 F.2d 467, 470 (2d Cir.
1985)).  Section 504(b) places an initial burden of proof on the
copyright holder, see 17 U.S.C. § 504(b) (requiring that the
copyright owner "present proof . . . of the infringer's gross
revenue"); Davis, 246 F.3d at 160 ("[T]he term 'gross revenue' [in
§ 504(b)] means gross revenue reasonably related to the

---

[7] Getty Images, Price a Rights-Managed Image, https://www.gettyimages.com/purchase/price-calculator/657077606 (last visited June 18, 2018).

9

infringement, not unrelated revenues."), a burden that Terry has not even attempted to carry.

Evaluating the economics of the situation, we conclude that § 504(b) damages in this case should be limited to the fair market value of the licensing fee -- i.e., that the profits portion of §504(b) damages should be $0. Consider the advantage that the infringer, Masterpiece, gained by using Terry's photograph in an infringing manner: most directly, Masterpiece saved the costs of the licensing fee that it would have paid Terry, cost savings that presumably accrued to Masterpiece as additional profit. However, the profits portion of § 504(b) damages may include only profits that "are attributable to the infringement and are not taken into account in computing the actual damages." 17 U.S.C. § 504(b). The additional profit to Masterpiece has already been accounted for in calculating Terry's actual damages, and "the double-counting of profits and damages [is] expressly barred" by § 504(b), Abeshouse, 754 F.2d at 470.

While it is conceivable that Masterpiece was able to secure additional advertising business as a result of prospective clients having viewed the infringing advertisement and been struck by its brilliance, second-order effects of this type are too speculative to warrant additional recovery in this type of case. A comparison to Davis, which also considered an advertising campaign with infringing elements, see 246 F.3d at 156, is instructive. In

Davis, the infringer and the business selling the products advertised in the campaign were the same entity -- The Gap. See id. Accordingly, the additional sales that Gap made as a result of customers having viewed the infringing advertisement were properly considered in the § 504(b) analysis, even though the Second Circuit concluded that the plaintiff's proof was insufficient. See id. at 159-60. Here, by contrast, Masterpiece is not the business being advertised in the infringing advertisement; Cape Bank is. If, as in Davis, Cape Bank had designed the infringing advertisement, the additional business that it received as a result would be far less speculative and would be properly considered in the § 504(b) analysis. But the connection between the additional profits and the infringement in such a scenario would be far less tenuous than the connection between Masterpiece's additional profits and its infringement, which is the relationship that we must consider here. Accordingly, we conclude that Terry has not established that the profits portion of § 504(b) includes any amount not already taken into account in calculating Terry's actual damages.

## III. Conclusion

Having previously reminded Terry's attorney of the need for an evidentiary basis on claiming copyright damages, and having previously ordered Terry to submit "all evidence necessary to support the amount of actual damages being claimed," Mar. 22, 2018

11

Order at 3, we conclude on the record before us that Terry is entitled to $1,560 in damages under 17 U.S.C. § 504(b).

The Clerk of the Court is respectfully directed to terminate this case and any motions pending therein and to enter judgment accordingly.

**SO ORDERED.**

Dated:   New York, New York
         June 21, 2018

                                    /s/ Naomi Reice Buchwald
                                    NAOMI REICE BUCHWALD
                                    UNITED STATES DISTRICT JUDGE